# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| SCOTT K. MEHERG, JR., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 18 C 4696 |
| v. | ) | |
| | ) | Judge Sara L. Ellis |
| PAUL SKRIVAN, AKINRINOLA FATOKI, | ) | |
| and CHARLES PEWITT, | ) | |
| | ) | |
| Defendants. | ) | |

## OPINION AND ORDER

During his incarceration in Illinois and Missouri jails, Plaintiff Scott Meherg was hospitalized twice after receiving medication to treat his high blood pressure. He now brings this § 1983 suit against Defendants Paul Skrivan, Akinrinola Fatoki, and Charles Pewitt, alleging they acted with deliberate indifference to his medical needs in violation of the Eighth and Fourteenth Amendments. Fatoki and Pewitt move to dismiss for lack of personal jurisdiction and Skrivan moves to dismiss for failure to state a claim. Because Meherg has not alleged facts sufficient for the Court to exercise personal jurisdiction over Fatoki and Pewitt, the Court severs his claims against Fatoki and Pewitt and transfers them to the United States District Court for the Eastern District of Missouri. Because Meherg has pleaded sufficient facts to state a claim of deliberate indifference as to Skrivan, he may proceed with that claim in this Court.

# BACKGROUND[1]

Meherg is a resident of Illinois, currently incarcerated at the Lake County Community Based Correctional Center in Waukegan, Illinois. He was arrested approximately on September 19, 2016, and held at two different jails before he was taken to the Saint Genevieve Sheriff's Office Detention Center ("Saint Genevieve Jail") in Saint Genevieve, Missouri, on October 29. While he was there, a doctor diagnosed Meherg with hypertension, and prescribed him two medications, metoprolol and lisinopril. The metoprolol caused allergic reactions in Meherg, including a rash and an accelerated heart rate. Pewitt, a primary care physician at the Saint Genevieve Jail, switched the metoprolol prescription to clonidine. Meherg then began to suffer side effects, including shortness of breath, dizziness, and fatigue. After his symptoms did not improve over several months, Pewitt increased Meherg's clonidine prescription from .1 milligrams twice a day to .2 milligrams twice a day.

Around March 2017, Fatoki became Meherg's primary care physician at the Saint Genevieve Jail although Pewitt continued to treat Meherg. Fatoki, a Missouri resident, is licensed to practice medicine in Missouri as well as in Illinois where he has treated patients, including at the Fayette County Jail in Vandalia, Illinois.

Meherg continued to suffer worsening side effects related to the clonidine until he was taken to the emergency room at Saint Genevieve County Memorial Hospital on March 24 for shortness of breath and an unstable heart rate. An EKG test showed sinus tachycardia and an abnormal rhythm. The hospital performed blood work that showed Meherg had elevated blood

---

[1] The facts in the background section are taken from Meherg's second amended complaint and are presumed true for the purpose of resolving Defendants' motions to dismiss. *See Virnich v. Vorwald*, 664 F.3d 206, 212 (7th Cir. 2011); *Local 15, Int'l Bhd. of Elec. Workers, AFL-CIO v. Exelon Corp.*, 495 F.3d 779, 782 (7th Cir. 2007). In considering Fatoki and Pewitt's motion to dismiss for lack of personal jurisdiction, the Court also considers the declarations and additional evidence submitted by Defendants and Meherg. *See Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003).

glucose and low white blood cell counts.  The hospital provided a copy of the medical report to Fatoki and recommended the jail reevaluate Meherg's medications.  Pewitt subsequently increased Meherg's clonidine to .3 milligrams twice a day.  On May 17, Pewitt prescribed an asthma medication to treat Meherg's shortness of breath.  Neither Fatoki or Pewitt followed up on the results of Meherg's blood work and Meherg continued to suffer allergic reactions to the clonidine.

Around August 23, Meherg was transferred to the Cook County Department of Corrections ("Cook County Jail"), in Chicago, Illinois, where Skrivan, a certified physician's assistant with the Cook County Health and Hospitals System, conducted an intake medical evaluation.  Meherg mentioned that the staff at Saint Genevieve Jail prescribed him clonidine for high blood pressure.  Without reviewing Meherg's medical records from Saint Genevieve Jail, Skrivan switched the clonidine prescription to amlodipine.  Meherg was unaware that discontinuing clonidine suddenly could cause withdrawal symptoms in individuals who had developed a dependency on the drug.  Two days later, on August 25, Meherg suffered from vomiting, shortness of breath, excessive sweating, dry mouth, elevated heart rate, and an inability to eat.  He asked to be seen by a nurse or doctor regarding his medication and was subsequently sent to the jail's health services emergency room.  Meherg then transferred to Stroger hospital where doctors diagnosed him with clonidine withdrawal.  The hospital placed Meherg back on clonidine in order to wean him off the medication through a series of tapered doses.  After Meherg stabilized, hospital staff released him back to Cook County Jail.

# ANALYSIS

## I.    Fatoki and Pewitt

### A.    Legal Standard

A motion to dismiss under Rule 12(b)(2) challenges whether the Court has jurisdiction over a party. The party asserting jurisdiction has the burden of proof. *See Tamburo v. Dworkin*, 601 F.3d 693, 701 (7th Cir. 2010). The Court may consider affidavits and other competent evidence submitted by the parties. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If the Court rules on the motion without a hearing, the plaintiff need only establish a *prima facie* case of personal jurisdiction. *GCIU-Emp'r Ret. Fund v. Goldfarb Corp.*, 565 F.3d 1018, 1023 (7th Cir. 2009). The Court will "read the complaint liberally, in its entirety, and with every inference drawn in favor of" the plaintiff. *Cent. States, Se. & Sw. Areas Pension Fund v. Phencorp Reinsurance Co.*, 440 F.3d 870, 878 (7th Cir. 2006) (quoting *Textor v. Bd. of Regents of N. Ill. Univ.*, 711 F.2d 1387, 1393 (7th Cir. 1993)). "[O]nce the defendant has submitted affidavits or other evidence in opposition to the exercise of jurisdiction," however, "the plaintiff must go beyond the pleadings and submit affirmative evidence supporting the exercise of jurisdiction." *Purdue*, 338 F.3d at 783. Any dispute concerning relevant facts is resolved in the plaintiff's favor. *Id.* at 782–83.

### B.    Personal Jurisdiction

Fatoki and Pewitt argue that the Court lacks personal jurisdiction over Meherg's claims against them. Because § 1983 does not provide any rules regarding service of process, the Court may exercise personal jurisdiction to the extent authorized by Illinois law. *Kinslow v. Pullara*, 538 F.3d 687, 690 (7th Cir. 2008). The Illinois long-arm statute authorizes courts to exercise personal jurisdiction on any basis permitted by the Illinois and United States Constitutions. *KM

*Enters., Inc. v. Global Traffic Techs., Inc.*, 725 F.3d 718, 732 (7th Cir. 2013) (citing 735 Ill. Comp. Stat. 5/2-209(c)). To the extent the federal constitutional and Illinois statutory inquiries diverge, "the Illinois constitutional standard is likely more restrictive than its federal counterpart," but both essentially focus on whether exercising jurisdiction over a defendant is fair and reasonable and thus a single inquiry suffices. *Id.*; *C.H. Johnson Consulting, Inc. v. Roosevelt Rds. Naval Station Lands & Facilities Redevelopment Auth.*, No. 1:12-cv-08759, 2013 WL 5926062, at *2 (N.D. Ill. Nov. 5, 2013) ("In light of the Seventh Circuit's assessment in *Hyatt* and the absence of post-*Rollins* [*v. Elwood*, 565 N.E.2d 1302, 1315 (Ill. 1990)] guidance from the Illinois courts as to how Illinois and federal law may differ as a practical matter in regard to personal jurisdiction, a single due process inquiry will suffice.").

The Due Process Clause allows personal jurisdiction over a defendant if he has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S. Ct. 339, 85 L. Ed. 278 (1940)). Personal jurisdiction comes in two forms: general and specific. General jurisdiction arises when the defendant's contacts with a state are so "'continuous and systematic' as to render them essentially at home in the forum state." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919, 131 S. Ct. 2846, 180 L. Ed. 2d 796 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317); *see also Tamburo*, 601 F.3d at 701 ("The threshold for general jurisdiction is high; the contacts must be sufficiently extensive and pervasive to approximate physical presence."). Specific jurisdiction exists "when the defendant purposefully directs its activities at the forum state and the alleged injury arises out of those activities." *Mobile Anesthesiologists Chicago, LLC v. Anesthesia Assocs. of Houston Metroplex, P.A.*, 623 F.3d 440,

5

444 (7th Cir. 2010). The Court looks to the "defendant's suit-related conduct" and its connection to the forum state; "a defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 284, 286, 134 S. Ct. 1115, 188 L. Ed. 2d 12 (2014); *Philos Techs., Inc. v. Philos & D, Inc.*, 802 F.3d 905, 915–16 (7th Cir. 2015).

Meherg does not allege that Fatoki or Pewitt ever treated him within the state of Illinois. Normally, this would indicate only general jurisdiction was at issue. *Aspen Am. Ins. Co. v. Interstate Warehousing, Inc.*, 90 N.E.3d 440, 446, 2017 IL 121281, 418 Ill. Dec. 282 (2017) ("In this case, plaintiff does not complain of any conduct committed by defendant in Illinois. Thus, only general jurisdiction is at issue here."). Curiously, Meherg asserts that the Court has general jurisdiction over Fatoki but specific jurisdiction over Pewitt. The Court considers these claims in turn.

Fatoki does not submit any evidence to contradict Meherg's assertions, so Meherg need only make out a *prima facie* case for general jurisdiction. He has not. Meherg alleges that Fatoki "has a long-standing history of practicing medicine in Illinois." Doc. 31 at 3. Meherg contends that this establishes continuous and systematic contacts sufficient to subject him to the Court's jurisdiction. But that is not enough. General jurisdiction requires contacts substantial enough to consider a defendant "constructively present in the state." *Purdue*, 338 F.3d at 787. "For an individual, the paradigm forum for the exercise of general jurisdiction is the individual's domicile." *Daimler AG v. Bauman*, 571 U.S. 117, 137, 134 S. Ct. 746, 187 L. Ed. 2d 624 (2014). In "exceptional" cases, there may be situations where the person's contacts are so substantial that they are essentially at home in a different state. *Id.* at 139 n.19 (noting that personal jurisdiction over a corporate defendant outside of its principal place of business or state

6

of incorporation would be "exceptional").² Here, Meherg alleges that Fatoki treated patients regularly at the Fayette County Jail in Illinois. But Fatoki is a resident of Missouri, who also practices medicine in Missouri, and most importantly, treated Meherg in Missouri. Meherg's argument would imply that Fatoki's practice at the Fayette County Jail would make it "fundamentally fair to require [him] to answer in an [Illinois] court in *any* litigation arising out of *any* transaction or occurrence taking place *anywhere* in the world." *Purdue*, 338 F.3d at 787. But Fatoki's regular treatment of detainees in Illinois does not justify haling him into an Illinois court for something completely unrelated to his medical practice. This would be akin to finding a corporation at home in any state in which it conducts business—a contention that courts have rejected. *See Daimler*, 571 U.S. at 139 n.20 ("A corporation that operates in many places can scarcely be deemed at home in all of them. Otherwise, 'at home' would be synonymous with 'doing business' tests framed before specific jurisdiction evolved in the United States."); *Aspen*, 90 N.E.3d at 446 ("[P]laintiff has established that defendant does business in Illinois through the warehouse in Joliet. But this fact falls far short of showing that Illinois is a surrogate home for defendant.").

Meherg argues that it was foreseeable that Fatoki might treat Illinois residents at the Fayette County Jail and he thereby purposefully directed his actions at Illinois residents. But this "elide[s] the essential difference between case-specific and general jurisdiction." *Goodyear*, 564 U.S. at 927 ("[T]ies serving to bolster the exercise of specific jurisdiction do not warrant a determination that, based on those ties, the forum has general jurisdiction over a defendant."); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472, 105 S. Ct. 2174, 85 L. Ed. 2d 528 (1985) ("Where a forum seeks to assert specific jurisdiction over an out-of-state defendant . . . [the] 'fair

---
² Most caselaw discussing general jurisdiction has done so in the context of corporations but the same principles apply to individuals. *See* Adam N. Steinman, *Federal Practice & Procedure* § 1069.5 (4th ed. 2019).

7

warning' requirement is satisfied if the defendant has 'purposefully directed' his activities at residents of the forum, and the litigation results from alleged injuries that 'arise out of or relate to' those activities." (citations omitted)). Therefore, Meherg has not carried his burden to establish a basis for the Court to exercise general jurisdiction over Fatoki.

Meherg asks, in the alternative, for the opportunity to conduct jurisdictional discovery to establish that personal jurisdiction is proper. "At a minimum, the plaintiff must establish a colorable or *prima facie* showing of personal jurisdiction before discovery should be permitted." *Cent. States, Se. & Sw. Areas Pension Fund v. Reimer Express World Corp.*, 230 F.3d 934, 946 (7th Cir. 2000). Here, it seems that the only state in which Fatoki is "at home" is Missouri. *Goodyear*, 564 U.S. at 919. It is difficult to see how Meherg could prove otherwise, and Meherg does not explain how additional jurisdictional discovery would aid him. Thus, further discovery is inappropriate in this case.

Although Meherg does not assert that there are grounds for exercising specific jurisdiction over Fatoki, the analysis is the same with respect to either Fatoki or Pewitt. Thus, the Court considers Meherg's arguments as if they applied to both Defendants. Meherg argues that the Court has specific jurisdiction because Fatoki and Pewitt purposefully directed their activities at an Illinois resident when they treated Meherg. *See Mobile*, 623 F.3d at 444. To support his argument, Meherg points to *Kostal v. Pinkus Dermatopathology Laboratories, Inc.*, which involved a Michigan pathology laboratory that provided diagnostic services through the mail to Illinois residents. 827 N.E.2d 1031, 1039, 357 Ill. App. 3d 381, 293 Ill. Dec. 150 (2005). The court found that it was appropriate to exercise specific jurisdiction over the defendant because "the doctor's services were fundamentally interstate in nature from the inception of the

relationship." *Id.* at 1044 (citation omitted). Meherg asserts that Pewitt similarly directed his treatment toward an Illinois resident.

Meherg's argument is analogous to a *per se* rule subjecting doctors to the jurisdiction of any state from which their patients come. *Kostal* states no such thing. Instead, *Kostal* noted there are special jurisdictional rules with respect to doctors "to ensure that jurisdiction is asserted only when that physician has purposefully availed himself of the privileges of conducting activities in the patient's state." *Id.* at 1039. Generally, "the tortious rendition of medical services outside the forum state is not a portable tort that would subject an out-of-state doctor to jurisdiction in the forum[.]" *Id.* at 1040. *Kostal* found a long-recognized "distinction between a situation where one ventures into a foreign state, receives medical treatment, returns to his home state and suffers injurious consequences, and a case where the nonresident physician diagnoses and treats a patient by mail." *Id.* at 1043. Meherg's case falls into the former category.[3] Pewitt and Fatoki's "suit-related conduct" does not create a "substantial connection" with Illinois, so there are no grounds to exercise specific jurisdiction. *Walden*, 571 U.S. at 284.

Meherg asks the Court to sever his claims against Fatoki and Pewitt and to transfer them to Missouri rather than dismissing them.[4] A district court can sever a claim under Rule 21 so long as the claims are "discrete and separate." *Gaffney v. Riverboat Servs. of Ind., Inc.*, 451 F.3d 424, 442 (7th Cir. 2006); Fed. R. Civ. P. 21. "In other words, one claim must be capable of

---

[3] Meherg's case is different in some respects from the caselaw *Kostal* examined because Meherg did not have a choice as to where he received medical treatment. *See generally Wright v. Yackley*, 459 F.2d 287, 288 (9th Cir. 1972); *Ballard v. Fred E. Rawlins, M.D., Inc.*, 428 N.E.2d 532, 533, 101 Ill. App. 3d at 602, 56 Ill. Dec. 940 (1981). But the Court's inquiry focuses on the defendant's conduct in order to "protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Walden*, 571 U.S. at 284 (citation omitted).

[4] Meherg did not explicitly ask to sever his claim against Fatoki. However, Meherg had asked for additional jurisdictional discovery as to Fatoki, so the Court assumes Meherg wants the Court to transfer both of his claims rather than dismiss them.

resolution despite the outcome of the other claim." *Gaffney*, 451 F.3d at 442. Here, the allegations against Fatoki and Pewitt are independent of the allegations against Skrivan because they center on Meherg's treatment at the Saint Genevieve Jail and Skrivan treated Meherg at a later time while he was at the Cook County Jail.

It is appropriate to transfer the claims in lieu of dismissal. A district court may transfer a case "to cure want of jurisdiction" in the interests of justice. 28 U.S.C. § 1631. The Seventh Circuit has not weighed in on whether this applies to situations involving a lack of personal jurisdiction. *See Carpenter-Lenski v. Ramsey*, No. 99-3367, 2000 WL 287651, at *2 (7th Cir. Mar. 14, 2000) (describing circuit split as to whether § 1631 only authorizes transfer to cure defects in subject matter jurisdiction). But several courts in this jurisdiction have held that it is applicable in such cases. *See Greene v. Mizuho Bank, Ltd.*, 169 F. Supp. 3d 855, 866–67 (N.D. Ill. 2016) (collecting cases from other circuits); *Rieke Corp. v. Am. Flange & Mfg. Co.*, No. 1:06-CV-275 AS, 2007 WL 1724897, at *9 (N.D. Ind. June 12, 2007) (transferring case in interests of justice because of statute of limitations); *Torco Holdings, Inc. v. P&M Aircraft Co.*, No. 00 C 5439, 2001 WL 322070, at *2 (N.D. Ill. Mar. 30, 2001) (transfer under § 1631 appropriate for lack of personal jurisdiction); *see generally* 15 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure* § 3842 (4th ed. 2019).

Here, Meherg states that he does not want to lose the benefit of his counsel's work thus far. He also states that he has statute of limitations concerns but neither party offers any insight into what the proper statute of limitations might be in Missouri. *See Mitchell v. Donchin*, 286 F.3d 447, 450 n.1 (7th Cir. 2002) ("To determine the proper statute of limitations for section 1983 actions, the federal court adopts the forum state's statute of limitations for personal injury claims."). Statute of limitations concerns are "particularly acute in prisoner cases, since

prisoners do not have lawyers and so are apt to miss deadlines," *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999), and Meherg will not receive the benefit of his current counsel in Missouri. For these reasons, a transfer under § 1631 makes sense because it preserves the date of the original filing. 28 U.S.C. § 1631 ("[T]he action or appeal shall proceed as if it had been filed in or noticed for the court to which it is transferred on the date upon which it was actually filed in or noticed for the court from which it is transferred."). The Court may also consider the merits of a case before deciding to transfer or dismiss it. *Phillips*, 173 F.3d at 610–11. Here, the Court is not prepared to find that Meherg's case is "a sure loser." *Id.* at 611. Therefore, the Court severs Meherg's claims against Fatoki and Pewitt and transfers them to the Eastern District of Missouri.

## II. Skrivan

### A. Legal Standard

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint, not its merits. Fed. R. Civ. P. 12(b)(6); *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). In considering a Rule 12(b)(6) motion to dismiss, the Court accepts as true all well-pleaded facts in the plaintiff's complaint and draws all reasonable inferences from those facts in the plaintiff's favor. *AnchorBank, FSB v. Hofer*, 649 F.3d 610, 614 (7th Cir. 2011). To survive a Rule 12(b)(6) motion, the complaint must not only provide the defendant with fair notice of a claim's basis but must also be facially plausible. *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009); *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

B.   **Sufficiency of the Complaint**

A pre-trial detainee's right to adequate medical care is protected under the Fourteenth Amendment's Due Process Clause. *Miranda v. Cty. of Lake*, 900 F.3d 335, 350 (7th Cir. 2018); *see also Hardeman v. Curran*, 933 F.3d 816, 823 (7th Cir. 2019) (holding that an objective unreasonableness standard "applies to all Fourteenth Amendment conditions-of-confinement claims brought by pretrial detainees"). To make out a constitutional claim, a pre-trial detainee must allege facts indicating that he had a serious medical need and that: 1) the defendant acted purposefully, knowingly, or recklessly with respect to the consequences of his actions, and 2) the defendant's actions were objectively unreasonable. *Miranda*, 900 F.3d at 353–54; *Hardeman*, 933 F.3d at 827 (Sykes, J., concurring).

Skrivan does not contest that hypertension is a serious medical condition. *Jackson v. Pollion*, 733 F.3d 786, 789 (7th Cir. 2013) ("Hypertension is a serious condition. Untreated it can result in strokes or heart attacks."). Rather, he argues that Meherg has not alleged sufficient facts to infer Skrivan had the requisite intent. Skrivan points out that there are no allegations that he knew Meherg had developed an undiagnosed dependency on clonidine. Thus, Skrivan argues, the subsequent withdrawal symptoms were entirely speculative and the sudden discontinuation of Meherg's clonidine was at most negligent. *See McCann v. Ogle Cty., Ill.*, 909 F.3d 881, 886 (7th Cir. 2018) ("A showing of negligence or even gross negligence will not suffice.").

But Meherg does allege that Skrivan knew there were serious risks to terminating Meherg's clonidine "cold turkey," Doc. 22 ¶ 71, and that Skrivan did so anyway. At this stage, Meherg does not need to plead all of the facts to support his claim. He need only allege a "short and plain statement of the claim showing that [he] is entitled to relief." Fed. R. Civ. P. 8(a)(2). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Meherg alleges that Skrivan knew Meherg was taking clonidine, failed to review his medical history, and "showed a gross indifference to whether Plaintiff would experience dangerous and debilitating withdrawal symptoms when, on August 23, 2017, [Skrivan] terminated or failed to continue Plaintiff's clonidine prescription." Doc. 22 ¶ 61. Although somewhat conclusory, this is enough. *See Ciarpaglini v. Saini*, 352 F.3d 328, 331 (7th Cir. 2003) (an allegation that the plaintiff's medication was "being gratuitously withheld without a reason" would have sufficed to state a claim).

Skrivan argues that whether his conduct was objectively reasonable is also not in dispute because at most Meherg's allegations only amount to a disagreement regarding the prescribed course of treatment, not a claim for constitutionally deficient medical care. *See Williams v. Patton*, 761 F. App'x 593, 597 (7th Cir. 2019) ("[A] mere disagreement with a medical professional's otherwise reasonable treatment is not a basis for a constitutional claim."). But Meherg has alleged that the sudden stop to his clonidine prescription was unreasonable and flouted accepted medical norms. Without evidence before the Court explaining what those medical norms are, this seems at least plausible and is all Meherg must plead to proceed to discovery. At this juncture, the Court is not in a position to evaluate whether Skrivan's conduct constitutes "blatantly inappropriate' medical treatment." *Perez v. Fenoglio*, 792 F.3d 768, 777 (7th Cir. 2015).

## CONCLUSION

For these reasons, the Court denies Fatoki and Pewitt's motions to dismiss [23, 35], and grants Meherg's alternative request to sever and transfer his claims against Fatoki and Pewitt [39]. The Court denies Skrivan's motion to dismiss [26]. The Court orders the Clerk to

transfer the severed claims against Fatoki and Pewitt to the United States District Court for the Eastern District of Missouri.

Dated: January 22, 2020

_____
SARA L. ELLIS
United States District Judge